Filed 12/18/14  P. v. Watkins CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CURTIS WATKINS,<br><br>　　　　Defendant and Appellant. | B252964<br><br>(Los Angeles County<br>Super. Ct. No. BA400349) |

APPEAL from a judgment of the Superior Court of Los Angeles County.   Laura F. Priver, Judge.  Affirmed as modified.

Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Curtis Watkins (defendant) appeals his second degree robbery conviction (Pen. Code, § 211)[1] on the grounds that the trial court wrongly denied his request to represent himself and his motion for a mistrial due to prosecutorial misconduct. There was no reversible error, so we affirm his conviction. Except for a minor modification, we also affirm his prison sentence of 35 years to life.

## FACTUAL AND PROCEDURAL BACKGROUND

A man wearing a hoodie held up Patrick Tyre with a gun at a gas station. Tyre's fiancée called 911 and relayed the license plate number of the car the robber used to get away. The police went to the home of the car's registered owner. The car was in front of the home; inside the car was a hoodie, and just outside of the car was a gym membership card belonging to Tyre. The cops found defendant inside the home, along with a gun and money. Tyre and his fiancée identified defendant in a driveby showup in the field; it is unclear whether the cops first told them that defendant was found with their belongings.

The People charged defendant with a single count of second degree robbery (§ 211), along with an enhancement for personal use of a firearm (§ 12022.53, subd. (b)). The information also alleged defendant's 1993 and 1996 convictions for robbery (§ 211) as prior "strikes" (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), as prior "serious" felonies (§ 667.5, subd. (c)), and as prior prison terms (§ 667, subd. (a)(1)). The information further alleged his 1996 assault with a deadly weapon conviction (§ 245, subd. (a)(2)) as a prior "strike" and prior "serious" felony, and his 2007 conviction for possessing a firearm (§ 12021) as a prison prior.

Defendant went to trial. The jury was instructed on direct liability, as well as aiding and abetting liability. The jury convicted defendant of robbery, but found the personal use of a firearm enhancement "not true." After his prior convictions were proven at a bench trial, the trial court sentenced him to a total of 35 years to life in state prison—25 years to life for the robbery (as a third "strike"), plus an additional five years

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

for each of the 1993 and 1996 robberies as "serious" felonies. The trial court stayed the prior prison sentence enhancements under section 654.

Defendant timely appealed.

## DISCUSSION

### I. Self-representation

Nearly eight months after his initial appearance in court and just minutes before the jury pool was to arrive in the courtroom, defendant announced for the first time that he wanted to represent himself. The trial court informed him that his request would be untimely unless he was ready to proceed to trial immediately. Although defendant initially said he was "ready to go forward," he next stated that there were "a lot of things [he] need[ed] to do." Defendant also indicated that he had not received any discovery for his case. When the trial court told him it would not grant a continuance and again asked if he was ready to proceed without one, defendant asked if the court was "gonna force [his] hand." The trial court then declared that the request was untimely and denied it.

A criminal defendant has the constitutional right to forego the constitutional guarantee of assistance of counsel and to represent himself at trial. (*Faretta v. California* (1975) 422 U.S. 806, 817-818.) But this right is "'not absolute.'" (*People v. Boyce* (2014) 59 Cal.4th 672, 702 (*Boyce*), quoting *Indiana v. Edwards* (2008) 554 U.S. 164, 171.) When a defendant invokes this right "within a reasonable time prior to the commencement of trial" (*People v. Burton* (1988) 48 Cal.3d 843, 852 (*Burton*), quoting *People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*)), the request must be granted except in special circumstances (such as when the defendant lacks competency to represent himself or has engaged in conduct that seriously threatens the core integrity of the trial). (*People v. Johnson* (2012) 53 Cal.4th 519, 530 [competency]; *People v. Carson* (2005) 35 Cal.4th 1, 8 [misconduct].) However, when a defendant's request is untimely, the court has discretion whether to allow self-representation. (*Boyce*, at p. 702; *People v. Powell* (2011) 194 Cal.App.4th 1268, 1277-1278 (*Powell*).)

Defendant argues that his request was timely. As a general matter, requests made

3

on the eve or morning of trial are considered untimely (e.g., *People v. Lynch* (2010) 50 Cal.4th 693, 702 (*Lynch*), overruled on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610), and are disfavored (*Powell*, *supra*, 194 Cal.App.4th at pp. 1277-1278).  In assessing timeliness, a court must look to the totality of the circumstances, including the nearness of the request to trial, counsel's readiness, the anticipated length and complexity of the trial, and, most relevant here, whether the defendant had earlier opportunities to assert his right to self-representation.  (*Lynch*, at p. 726; see also *People v. Herrera* (1980) 104 Cal.App.3d 167, 173-175 [defendant's request at "earliest opportunity" after he tried to enter a plea of not guilty by reason of insanity was timely].)  In this case, defendant requested self-representation just minutes before the jury pool was to arrive, and he had several prior opportunities to do so:  He had 10 prior court appearances, not including the three times he refused to come to court.  His request was untimely.

Defendant alternatively contends that the trial court abused its discretion in denying his untimely request.  In exercising its discretion whether to grant or deny an untimely request, a court is to consider several factors:  (1) the quality of defense counsel's representation; (2) the defendant's prior proclivity to substitute counsel; (3) the reasons for the request; (4) the length and stage of the proceedings; and (5) the disruption and delay which might reasonably be expected to follow the granting of such a motion.  (*Burton*, *supra*, 48 Cal.3d at p. 853, citing *Windham*, *supra*, 19 Cal.3d at p. 128.)  Defendant levels three attacks at the trial court's ruling.

First, defendant argues that the trial court erred in not analyzing each of the factors on the record.  However, explicit findings are not required.  (*People v. Perez* (1992) 4 Cal.App.4th 893, 910, fn. 10.)

Second, defendant asserts that the trial court's ruling is inconsistent with *People v. Nicholson* (1994) 24 Cal.App.4th 584 (*Nicholson*) and *People v. Tyner* (1977) 76 Cal.App.3d 352 (*Tyner*).  These cases are distinguishable.  Both concluded a defendant's last-minute request to proceed without counsel was wrongly denied when the request was not "accompanied by any request for a continuance" (*Tyner*, at p. 355), and when there

4

was "no hint that one would be forthcoming if pro. per. status was granted" (*Nicholson*, at p. 592). Although defendant initially stated that he was "ready to go forward," he also stated that there were "a lot of things [he] need[ed] to do" and refused to answer the trial court's followup questions as to whether he was ready, in light of those "things to do" and the absence of any discovery. The trial court did not abuse its discretion in not accepting defendant's initial response at face value, and inquiring further. Moreover, defendant's answers to the court's questioning revealed more than a "hint" that a continuance request would be forthcoming.

Lastly, defendant asserts that the trial court's ultimate denial of his request was an abuse of discretion. We accord "considerable weight" to the trial court's decision (*People v. Howze* (2001) 85 Cal.App.4th 1380, 1397), and conclude there was no abuse of discretion. Although defendant had not previously asked to represent himself and was not asked (and did not offer) why he wanted to do so, his request was made for the first time minutes before the jury was to arrive and his answers to the court's questions reasonably led the trial court to find that he would ask for a continuance to start on the "things to do" he perceived were undone.

## II.     Prosecutorial misconduct

Midway through the People's case-in-chief, the trial court ruled that, if defendant chose to testify, the prosecution could cross-examine him regarding his 1996 robbery conviction along with his use of a gun during that robbery. Defendant testified. During cross-examination, the prosecutor asked if he had previously been convicted of a robbery and whether it had involved the use of a gun; defendant answered "yes" to both. The prosecutor then asked, "So that prior robbery it was also at a gas station, right?" Defendant objected and moved for a mistrial, and the trial court denied the motion and asked the prosecutor to move on before defendant answered.

Defendant renewed his mistrial motion two more times. The prosecutor explained that she had just learned of the gas station locale and indicated she had not understood the trial court's earlier ruling to preclude reference to additional facts from the crime. The

trial court stated that the scope of its order had not been clear, and that the prosecutor had not intentionally violated it. The court nevertheless concluded that the prosecutor's question was not appropriate, and took the defendant's suggestion and gave the following curative jury instruction: "You have heard evidence that [defendant] suffered a prior conviction for robbery. Just as with any other witness you may consider that fact only in evaluating the credibility of the witness's testimony. There is no evidence that this prior incident occurred at a gas station. As the questions of counsel are not evidence, and in this case improper, you must disregard any question suggesting that that fact was true."

"The permissible scope of cross-examination of a defendant is generally broad" (*People v. Chatman* (2006) 38 Cal.4th 344, 382 (*Chatman*)), but there are constitutional boundaries. A prosecutor violates federal due process by asking questions that " ' " ' " 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.' " ' " ' " (*People v. Wallace* (2008) 44 Cal.4th 1032, 1070 (*Wallace*), quoting *Darden v. Wainwright* (1986) 477 U.S. 168, 181.) As relevant to this case, the prosecutor violates state law if she (1) intentionally asks a question that violates a court order (*People v. Silva* (2001) 25 Cal.4th 345, 373), or (2) otherwise "uses ' " ' " 'deceptive or reprehensible methods to attempt to persuade either the court or the jury' " ' " ' " [citations]" (*Wallace*, at pp. 1070-1071). Bad faith is not required (*People v. Bolton* (1979) 23 Cal.3d 208, 213-214 (*Bolton*)), but prejudicial effect is (*People v. Warren* (1988) 45 Cal.3d 471, 480 (*Warren*)). If the misconduct is called to the court's attention midtrial, the court should only grant a mistrial when the defendant's chances of receiving a fair trial have been "irretrievably damaged." (*People v. Garcia* (2014) 229 Cal.App.4th 302, 311 (*Garcia*).)

The trial court determined that the prosecutor's question regarding the location of the crime underlying the 1996 robbery conviction was improper, but deemed a curative instruction sufficient to cure any prejudice. Defendant raises three challenges.

Defendant argues that the prosecutor's question was improper. But the trial court agreed with him on this point, and so do we. Although the prosecutor did not violate any

6

court order, the question she asked sought to elicit evidence that was probably inadmissible. The location of the prior robbery was not relevant to defendant's character for truth and veracity; it pertained to a specific instance of conduct inadmissible to prove defendant's propensity for robberies under Evidence Code section 1102; and its admissibility as proof of identity or common scheme or plan under Evidence Code section 1101, subdivision (b) was uncertain at best (and certainly should have been vetted first). "'It is misconduct for a prosecutor intentionally to elicit inadmissible testimony [citations]'" (*Chatman*, *supra*, 38 Cal.4th at pp. 379-380, italics omitted; *People v. Smithey* (1999) 20 Cal.4th 936, 960), at least if she *knows* the answer is inadmissible (*People v. Hawthorne* (2009) 46 Cal.4th 67, 98, overruled on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610). Although the trial court's findings indicate that the prosecutor may not have known the answer to her question was inadmissible, the question—whether or not "misconduct"—was improper. (Cf. *Chatman*, at p. 379 [questioning whether, on similar facts, the prosecutor's question "is properly considered . . . misconduct"].) However, this question, involving a single detail of an otherwise properly admissible prior conviction and cured with a jury admonition, did not "so infect the defendant's trial with unfairness" as to violate his federal right to due process.

Defendant next contends that the misconduct was prejudicial, and thus warrants reversal. Defendant cites several cases, but each of them involves a different—and hence distinguishable—species of prosecutorial misconduct. (Compare *People v. Wagner* (1975) 13 Cal.3d 612, 618 [improper questioning regarding details of prior crimes when there was no prior conviction]; *Warren*, *supra*, 45 Cal.3d at pp. 480-481 [prosecutor asked questions suggesting certain facts were true without good faith belief the facts existed]; *Bolton*, *supra*, 23 Cal.3d at pp. 212-214 [prosecutor referred in closing argument to evidence never admitted at trial]; *People v. Dykes* (2009) 46 Cal.4th 731, 766 [prosecutor should not ask questions that are "damaging but irrelevant"].) Here, the prosecutor asked a single question regarding a detail of a prior crime resulting in a conviction after the trial court ruled that the crime and one of its details (the use of a gun)

were proper for impeachment. The court then gave a curative instruction, which is presumed to be sufficient (cf. *Garcia*, *supra*, 229 Cal.App.4th at pp. 311-312), unless the "improper subject matter is of such a character that its effect on the minds of the jurors cannot be removed by the court's admonitions" (*People v. Seiterle* (1963) 59 Cal.2d 703, 710), such as when the prosecutor refers to a prior conviction that is entirely inadmissible (e.g., *People v. Ozuna* (1963) 213 Cal.App.2d 338, 340-342; *People v. Figueriedo* (1955) 130 Cal.App.2d 498, 505-506). Here, the prosecutor's single question was not of that magnitude.

Defendant lastly argues that the trial court abused its discretion in not granting a mistrial. A trial court has """"considerable discretion"""" in this regard (*Garcia*, *supra*, 229 Cal.App.4th at p. 311), and did not abuse it here. The prosecutor's question was asked just once, was never argued to the jury, and was the subject of a special curative instruction. On these facts, defendant's chances of receiving a fair trial were not "irretrievably damaged" (*ibid.*).

## III.    Sentence modification

The People argue that the trial court should have stricken the prison priors that were also used as "serious" felony enhancements, rather than staying them. This is correct. (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1094, fn. 3.)

## DISPOSITION

The judgment is modified to strike rather than stay the one-year prior prison term enhancements.  (§ 667.5, subd. (b).)  The trial court is directed to amend the abstract of judgment accordingly and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

CHAVEZ

9